IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 8, 2018 Session

**IN RE ATRIVIUM K., ET AL.**[1]

**Appeal from the Juvenile Court for Jackson County**
**No. 2016-JV-100    Tiffany Gentry Gipson, Judge**

_____

**No. M2017-01046-COA-R3-PT**

_____

Mother appeals the termination of her parental rights to her two children.  Upon our review, we conclude that the order of termination fails to comply with Tennessee Code Annotated section 36-1-113(k)'s requirement that the court make specific factual findings, which precludes our meaningful review.  We vacate the order and remand for entry of an order that complies with subsection 113(k).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated;**
**Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Kayla Collins Cantrell, Gainesboro, Tennessee, for the appellant, Danielle J. K.

Herbert H. Slatery, II, Attorney General and Reporter; and Jordan K. Crews, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

### I.    FACTUAL AND PROCEDURAL HISTORY

Danielle K. and Cory A. are the parents of the two children at issue in this proceeding: Atrivium, born February 2012, and Ametria, born April 2013.  Though the parents are not married, Cory A. is listed as the father on both birth certificates, and he signed a Voluntary Acknowledgement of Paternity with respect to both children.[2]  The

_____

[1] This Court has a policy of protecting the identity of children by initializing the last names of the parties.

[2] However, a DNA Test Report entered at trial shows that Father is not the biological father of Atrivium.

Department of Children's Services (DCS) became involved with the family when it received a referral of dependency and neglect in May 2015, based on allegations of unsanitary living conditions and the children's exposure to drugs. A DCS investigator went to the home on May 8; both parents submitted to a drug screen and tested positive for Suboxone and marijuana. The children were left in the custody of the parents while DCS continued its investigation. On May 15, DCS filed a petition to have the children declared dependent and neglected and requested that the court order the children into protective supervision or grant DCS temporary legal custody. A hearing on the petition was scheduled for May 19. The parents did not attend the hearing, so a DCS case worker went to the home and found the two children, along with two other children not at issue in this appeal, unsupervised while Father slept. Father submitted to a drug screen at the time and again tested positive for Suboxone and marijuana.

DCS filed a petition on May 21 seeking a protective custody order that would place the children with their great-grandparents. A kinship protective custody order was entered the same day, and the children were removed from the parents' home and placed in the home of their maternal great-grandmother. At some point during the pendency of the dependent and neglect proceedings, Mother was arrested and placed in the Jackson County jail, because her positive drug screens were a violation of her probation.

The parents waived the preliminary hearing on the dependency and neglect petition, and an adjudicatory hearing was held on November 3, 2015; the court entered an order adjudicating the children dependent and neglected due to the children's "abuse and/or neglect" and ordered them to remain with the maternal great-grandparents. Due to a roach and bedbug infestation at the great-grandparent's home as well as the threats made by the children's grandfather,[3] a new proceeding was initiated on May 24, 2016; the children were placed in the custody of DCS and placed in a foster home. They were again adjudicated dependent and neglected on July 5, 2016. The children were moved to a different foster home in November 2016, where they have remained.

Permanency plans were created in June 2016 and October 2016; both were ratified by the court. The plans called for Mother to primarily address her drug abuse and mental health issues. Mother attempted therapy and drug rehabilitation but was unsuccessful. Mother and Father have continued to test positive for drugs throughout DCS's involvement with this family; on December 7, 2016, Mother tested positive for amphetamine, Suboxone, and methamphetamine.

---

[3] The adjudicatory order found that "the paternal [sic] grandfather to the children, Archie K[.], has been making threats of attempting to get these children removed from the custody of the temporary placement, and has a volatile relationship with many family members. In addition, he lives very nearby to this placement."

DCS filed a petition to terminate both parents' parental rights on December 13, 2016, on the grounds of abandonment by failure to provide a suitable home; substantial noncompliance with the permanency plan; persistence of conditions; failure to manifest an ability and willingness to assume legal and physical custody of the children. The petition also alleged that termination was in the children's best interest. Counsel was appointed for the parents, and a guardian *ad litem* was appointed for the children.

A hearing on the petition was held on April 24, 2017, at which the following persons testified: Pamela Ramsey, the DCS investigator; Lori Looper, the case worker from September 2015 through May 2016; Stephanie Stack, the case worker since May 2016; Lora Walrath, the regional director of Bradford Health Services, where Mother attempted intensive outpatient treatment for her drug issues; Keri L., the children's foster mother; Father; and Mother.

The court entered an order terminating the parents' rights to the two children on the grounds of the abandonment by failure to provide a suitable home, substantial noncompliance with the permanency plans, persistence of conditions, and failure to manifest a willingness and ability to assume legal and physical custody of the children. The court also found that termination was in the children's best interest.

Mother appeals, challenging whether DCS has proven the grounds for termination by clear and convincing evidence, and whether the court's best interest determination was supported by clear and convincing evidence.

## II.  STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). However, that right is not absolute and may be terminated in certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State Dep't of Children's Serv. v. C.H.K.,* 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Thus, parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). To support the termination of parental rights, only one ground need be proved, so long as it is proved by clear and convincing evidence. *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases. *Santosky*, 455 U.S. at 766–69. A court may terminate a person's parental rights only if (1) the existence of at least one statutory

3

ground is proved by clear and convincing evidence and (2) it is shown, also by clear and convincing evidence that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808–09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, "as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements" necessary to terminate parental rights. *Id.* In this regard, clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence" and which "produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established." *In re Alysia S.,* 460 S.W.3d 536, 572 (Tenn. Ct. App. 2014) (internal citations omitted).

## III.   ANALYSIS

As this is a termination of parental rights case, this court is obliged to consider whether the evidence clearly and convincingly established that grounds existed to terminate Mother's rights and that termination was in the children's best interest. *In re Carrington*, 483 S.W.3d 507, 525-26 (Tenn. 2016) *cert. denied sub. nom. Vanessa G. v. Tenn. Dep't of Children's Servs.*, 137 S. Ct. 44 (2016) ("[I]n an appeal from an order terminating parental rights[,] the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal.").

Tennessee Code Annotated section 36-1-113(k) requires the trial court to enter an order "that makes *specific* findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." (emphasis added). In *In re Navada N.*, this Court observed:

> It is not the role of this Court to parse the record in search of clear and convincing evidence to support DCS's case or to make factual findings where the trial court fails to do so. *See also State v. McBee*, No. M2003-01326-COA-R3-PT, 2004 WL 239759 at *6 (Tenn. Ct. App. Feb. 9, 2004) (noting that when a trial court fails to make findings of fact on an issue "we cannot simply review the record de novo and determine for ourselves where the preponderance of the evidence lies"). The role of this Court is an error-correcting court, and our review is limited to the trial court's written findings and conclusions. *Smith v. Gore*, 728 S.W.2d 738, 746–47 (Tenn. 1987). This is especially true in light of Tennessee Code Annotated Section

36-1-113(k)'s requirement that trial courts enter written orders containing specific findings of fact and conclusions of law in termination cases. A trial court's failure to comply with subsection (k) "fatally undermines the validity of a termination order." *In re S.M.,* 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004).

498 S.W.3d 579, 594 (Tenn. Ct. App. 2016).

Our review is limited to the trial court's written findings and conclusions. *In re Navada N.,* 498 S.W.3d at 594. The order terminating Mother's rights, however, does not satisfy the court's responsibility imposed by Tennessee Code Annotated section 36-1-113(k). The order, entered the same day as the hearing, is largely a verbatim recitation of the allegations contained in the petition for termination; the order's "findings" relative to both the grounds for termination and the best interest determination appear to have been cut and pasted from the petition and contain no discussion or elaboration beyond the allegations of the petition. The hearing transcript shows that the court rendered its decision immediately after declaring the proof closed and hearing summation from counsel; the oral ruling consisted of conclusory statements that the various grounds for termination had been established and that termination was in the best interest of the children. Indeed, counsel for the Department announced at the conclusion of the oral ruling that an order terminating Mother's rights had already been prepared; it was entered that day.

In form and substance, the order does not comply with the applicable law and the high burden that is before the court in deciding to terminate a parent's rights. We are not convinced that the order was the result of the court's "'own considered conclusions.'" *Smith v. UHS of Lakeside, Inc.,* 439 S.W.3d 303, 315 (Tenn. 2014) (quoting *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573 (1985)).[4] Accordingly, we vacate the judgment terminating Mother's parental rights and remand the case for the court to make specific findings of fact and conclusions of law in compliance with Tennessee Code Annotated section 36-1-113(k).

RICHARD H. DINKINS, JUDGE

---

[4] We are constrained to comment on the inadequacy of the order terminating Mother's rights which was prepared by DCS's trial counsel; it merely copied the allegations of the petition as findings of fact, and was submitted to the court for entry immediately after the ruling. We caution against this practice in the future. In addition, had we not resolved this case in the manner in which we have, our review of the termination of this Mother's rights would have been hampered by the deficiencies of Mother's brief, which does not contain any citations to the record in its argument section, in contravention of Rule 27(a)(7)(A) of the Tennessee Rules of Appellate Procedure.